UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X

JERRELL MILLER,

                Plaintiff,          **REPORT AND RECOMMENDATION**
-against-                              05 CV 5493 (CBA) (LB)

DEPUTY OF SECURITY BAILEY;
WARDEN VALERIE OLIVER;
COMMISSIONER MARTIN F. HORN,
In their "official capacities,"

                Defendants.
------------------------------------------------------X
BLOOM, United States Magistrate Judge:

Plaintiff, Jerrell Miller, brings this *pro se* action pursuant to 42 U.S.C. § 1983 ("§ 1983"), alleging that he was unconstitutionally strip searched while in custody at Rikers Island Correctional Facility ("Rikers"). Currently before the Court is defendants' motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56. Plaintiff cross moves for leave to amend his complaint pursuant to Fed. R. Civ. P. 15, as part of his opposition to defendants' motion. The Honorable Carol B. Amon referred these motions to me for a Report and Recommendation in accordance with 28 U.S.C. § 626(b). It is respectfully recommended that defendants' motion should be granted, plaintiff's cross-motion should be denied and this action should be dismissed.

## BACKGROUND

Plaintiff's complaint alleges that on February 24, 2004, while incarcerated on a parole violation at Rikers, he was subjected to a "routine random strip frisk search." Complaint,

1

Statement of the Claim at 6, ¶ 1.[1]  Plaintiff further alleges that the strip search "was handle[d] in a degrading, intrusive, embarrassing and abusive manner when obviously there [was] no reasonable suspicion nor probable cause to believe that the plaintiff possessed or was in possession of contraband, weapon or drugs." Id. at 7, ¶ 5.  Plaintiff seeks monetary damages.

## PROCEDURAL HISTORY

Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), for failure to exhaust administrative remedies before bringing suit, for failure to state a claim upon which relief can be granted, and for failure to allege any personal involvement by the individual defendants.  In the alternative, defendants move for summary judgment pursuant to Fed. R. Civ. P. 56.  Plaintiff now represented by counsel, opposed the motion, and seeks leave to amend the complaint.  Defendants filed a reply.

## DISCUSSION

### Standard of Review for Motion to Dismiss

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  See Cleveland v. Caplaw Enterp., 448 F.3d 518, 521 (2d Cir. 2006); Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127

---

[1] The Court has assigned page numbers to plaintiff's complaint for ease of reference.

S.Ct. 1955, 1964-65 (2007) (internal quotation marks, citations, and alterations omitted). Indeed, a plaintiff must assert "enough facts to state a claim to relief that is plausible on its face." Id. at 1974. This "plausibility standard" is a flexible one, "oblig[ing] a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).

### Standard of Review for Motion for Summary Judgment

A motion for summary judgment may be granted when a court "determines that there is no genuine issue of material fact to be tried." Savino v. City of New York, 331 F.3d 63, 71 (2d Cir. 2003) (citing Fed.R.Civ.P. 56(c) and Celotex Corp. v Catrett, 477 U.S. 317 (1986)). "A genuine issue of material fact exists 'if the evidence is such that a reasonable juror could return a verdict for the nonmoving party.'" Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)). "The trial court's function in deciding such a motion is not to weigh evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000).

"When a motion for summary judgment is made and supported . . ., an adverse party may not rest upon the mere allegations or denial of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In other words the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to defeat summary judgment. Anderson, 477 U.S. at 252.

3

As a threshold matter, it is axiomatic that where plaintiff is proceeding *pro se*, the Court is obliged to "read [his] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest." Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Although plaintiff is now represented by counsel, the Court will review plaintiff's previous *pro se* submissions under the more lenient standard.

## Exhaustion of Administrative Remedies

Defendants move to dismiss the complaint on the ground that plaintiff failed to exhaust his administrative remedies by failing to comply with the administrative grievance procedures as set forth by New York City Department of Corrections.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires an inmate to exhaust such "administrative remedies as are available" before bringing an "action . . . with respect to prison conditions." The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any federal action about prison life, see Porter v. Nussle, 534 U.S. 516, 532 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process. See Booth v. Churner, 532 U.S. 731, 741 (2001).

Moreover, an inmate must properly exhaust administrative remedies that is, the inmate must "compl[y] with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, --- U.S. ----, ---- - ----, 126 S.Ct. 2378, 2386-87 (2006) (internal citation and quotation omitted); Lunney v. Brureton, No. 04 Civ. 2438, 2007 WL 1544629, at *5 (S.D.N.Y. May 29, 2007).

4

The exhaustion requirement is not jurisdictional in nature, but is an affirmative defense which must be pleaded and proved by a defendant. Jones v. Bock, --- U.S. ----, 127 S.Ct. 910, 919-22 (2007); see, e.g. Handberry v. Thompson, 436 F.3d 52, 59 (2d Cir. 2006); Richardson v. Goord, 347 F.3d 431, 434 (2d Cir. 2003). Dismissal for failure to exhaust is appropriate if it is clearly established in the record. See Voorhees v. Goord, et al., No. 05 Civ. 1407, 2006 WL 1888638, at *7 (S.D.N.Y. Feb. 24, 2006) (affirmative defense may be raised by a 12(b)(6) motion without resort to summary judgment procedure, if the defense appears on the face of the complaint); McCoy v. Goord, 255 F.Supp.2d 233, 247 (S.D.N.Y. 2003).

Here, it is not readily apparent from plaintiff's complaint what administrative remedies were in fact available to plaintiff. See Jones, 127 S.Ct. at 919-921 ("inmates are not required to specifically plead or demonstrate exhaustion in their complaints"). Accordingly, for the narrow purpose of determining exhaustion, defendants' motion is converted to one for summary judgment to give plaintiff an opportunity to address his alleged failure to exhaust.[2] Williams v. Metropolitan Detention Center, 418 F.Supp.2d 96, 101 (E.D.N.Y. 2005); Page v. Breslin, No. 02 CV 6030, 2004 WL 2713266, at *2 (E.D.N.Y. Nov. 29, 2004).

Plaintiff argues that his complaint should not be dismissed because he made an effort to exhaust his administrative remedies. Specifically, plaintiff alleges that he wrote out a grievance and placed it in the grievance box, but never received a response. Plaintiff's Opposition to Defendants' Motion to Dismiss the Complaint at 3 ("Pl's Opp."); Complaint at 4-5, ¶ II C.

---

[2] Anticipating this possibility, defendants served plaintiff with the required "Notice to Pro Se Litigant Opposing Motion to Dismiss Which May be Treated As Motion for Summary Judgment," pursuant to Local Civil Rule 12.1.

5

Plaintiff alleges that "[t]he grievance procedure did not make it clear what to do in a situation where the prison gives no response. As [plaintiff] understood the procedures, [he] was not mandated to appeal the decision, or non-decision." See Pl's Opp. at Exhibit 1 ¶ 8. Furthermore, plaintiff alleges that he asked a correction officer why he was strip searched, and was told "your [sic] the inmate and we are correctional officers, you do what is told." Id. at 7; Complaint at 5, ¶ F (1)(2). Finally, plaintiff alleges that he was transferred to another correctional facility in May 2004, which prevented him from exhausting his administrative remedies. Pl's Opp. at 11.

Where an inmate has not exhausted administrative remedies according to the letter of the prescribed prison procedures, the Court must determine whether circumstances existed to excuse the inmate's failure to exhaust his administrative remedies. Brownell v. Krom, 446 F.3d 305, 311 (2d Cir. 2006). "[U]ntimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement." Ruggiero v. County of Orange, 467 F.3d 170, 176 (2d Cir. 2006) (quoting Woodford, 126 S.Ct at 2382).

The Second Circuit has developed a "three part inquiry" to determine whether an inmate fulfilled the PLRA exhaustion requirement. See Brownell, 446 F.3d at 311-12 (citing Hemphill, 380 F.3d at 686). The Court should consider (1) whether the administrative remedies were available to the inmate; (2) whether defendants' actions inhibited exhaustion thereby estopping defendants from raising the defense; and (3) whether special circumstances justify the inmate's failure to comply with the exhaustion requirement. Id. These exceptions recognize that "the PLRA's exhaustion requirement is not so rigid as to permit the barring of all suits brought after administrative remedies are no longer available, regardless of the circumstances, and simply

because the plaintiff failed to follow prison grievance procedures to the letter." Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004).

The first question is whether administrative remedies were in fact available to plaintiff. Macias v. Zenk, 459 F.3d 37, 41 (2d Cir. 2007); Brownell, 446 F.3d at 311. To be available, an administrative remedy must afford "the possibility of some relief for the action complained of." Booth, 532 U.S. at 738; accord Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004). "The test for determining whether ordinary grievance procedures were available to an inmate is an objective test and asks whether a 'similarly situated individual of ordinary firmness' [would] have deemed them available." Dukes v. S.H.U.C.O. John Doe # 1, No. 03 Civ. 4639, 2006 WL 1628487, at *4 (S.D.N.Y. June 12, 2006) (quoting Hemphill, 380 F.3d at 688) (brackets in original).

Similarly, justification for a failure to exhaust otherwise available administrative remedies is determined by "looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." Giano, 380 F.3d at 678 (prisoner's belief that direct appeal of his disciplinary conviction was his only available remedy was a reasonable interpretation of DOCS' directives and therefore his failure to exhaust was justified); Hepworth v. Suffolk County, No. 03 CV 6473, 2006 WL 2844408, at *5 (E.D.N.Y. Sept. 29, 2006) (exhaustion excused where inmate was threatened for filing a grievance).

Rikers internal grievance procedure is set forth in New York City Department of Correction Directive # 3375R ("Directive 3375R"). See Notice of Motion in Support of Defendants' Motion to Dismiss the Complaint at Exhibit C ("Defs' Motion"). According to the

Directive: first, an inmate files a grievance with the Inmate Grievance Resolution Committee (IGRC), and an attempt is made to informally resolve the dispute within five days. If informal resolution fails the inmate may then request a formal hearing. The IGRC renders a formal decision on the complaint within three days of a hearing, and an appeal may be taken by the inmate to the Warden within three days. Within five days, the Warden issues a decision, which the inmate may appeal to the Central Office Review Committee (CORC). CORC renders a decision within fifteen working days, which in turn may be appealed to the Board of Correction (BOC). The BOC then makes a recommendation to the Commissioner, who issues a final decision. Id.; see, e.g., Bligen v. Griffen, No. 06 Civ. 4400, 2007 WL 430427, at *2 (S.D.N.Y. Feb. 8, 2007); McCoy, 255 F.Supp.2d at 246.

Here, administrative remedies were available to plaintiff. Plaintiff has not alleged any facts which effectively rendered the administrative process unavailable. Plaintiff simply alleges that he misunderstood the grievance procedure and did not realize that it was "compulsory for plaintiff to appeal the non-decision he received." See Pl's Opp. at 9. See George v. Morrison, No. 06 Civ. 3188, 2007 WL 1686321, at *3 (S.D.N.Y. June 11, 2007) (even when an inmate files a grievance and receives no response, he must nevertheless properly exhaust all appeals before his grievance is considered exhausted); see also Hargrove v. Riley, No. 04 CV 4587, 2007 WL 389003, at *8 n.15 (E.D.N.Y. Jan. 31, 2007) ("lack of a response from the [Inmate Grievance Review Committee] does not excuse an inmate's obligation to exhaust his remedies through available appeals."); Bligen, 2007 WL 430427, at *2 ("even when an inmate files a grievance and receives no response, he must nevertheless properly exhaust all appeals before his grievance is considered exhausted."); Hernandez v. Coffey, No. 99 Civ. 11615, 2006 WL 2109465, at *4-5

(S.D.N.Y. July 26, 2006); Williams v. City of New York, No. 03 Civ. 5342, 2005 WL 2862007, at *10 (S.D.N.Y. Nov. 1, 2005) (same); Acosta v. Corr. Officer Dawkins, No. 04 Civ. 6678, 2005 WL 1668627, at *3 (S.D.N.Y. July 14, 2005) (inmate required to appeal lack of response to exhaust administrative remedies).

Additionally, plaintiff's argument that his transfer in May 2004, from Rikers to Great Meadow Correctional Facility, rendered all administrative remedies unavailable is unavailing. See, e.g., Hargrove, 2007 WL 389003 at *9; Sims v. Blot, No. 00 Civ. 2524, 2003 WL 21738766, at *4 (S.D.N.Y. July 25, 2003) (failure to exhaust administrative remedies is not excused by transfer to another facility); Santiago v. Meinsen, 89 F.Supp.2d 435, 440-41 (S.D.N.Y. 2000) (determining that plaintiff should not be "rewarded" for failing to participate in grievance procedure before being transferred). Here, the incident plaintiff complains about occurred on February 24, 2004. Plaintiff was not transferred until May 2004. Plaintiff had ample opportunity to file his grievance and to appeal the results as required by Directive 3375R. Accordingly, plaintiff's transfer to another correctional facility cannot excuse his failure to properly exhaust.

Plaintiff further argues that defendant should be estopped from raising non-exhaustion as an affirmative defense because "of the lack of response from the prison" and "as plaintiff is justified in his reasonable interpretation of the grievance procedures." Pl's Opp. at 11-12. Under the Second Circuit's three-part inquiry, the Court must determine "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." Hemphill, 380 F.3d at 686 (citations omitted).

9

Under this analysis, defendants may be estopped from raising a non-exhaustion affirmative defense where prison officials prevented an inmate from exhausting his administrative remedies. See Ziemba, 366 F.3d at 162-63 (estopping defendants where inmate was beaten, threatened, denied grievance forms, and transferred to another prison). As previously discussed, plaintiff does not allege that Rikers staff in any way prevented him from completing the grievance process. Plaintiff simply misunderstood the process. Accordingly, defendants should not be estopped from raising plaintiff's failure to exhaust as an affirmative defense.

Next, the Court must consider whether any special circumstances frustrated an inmate's grievance. Rodriguez v. Westchester County Jail Corr. Dep't, 372 F.3d 485, 487 (2d Cir. 2004); McClenton v. Menifee, No. 05 Civ. 2844, 2006 WL 2474872, at *26-27 (S.D.N.Y. Aug. 22, 2006). Courts determine whether a plaintiff is justified by considering what "might understandably lead [*pro se*] prisoners to fail to grieve in the normally required way." Brownell, 446 F.3d at 312 (quoting Giano, 380 F.3d at 678). If a statute mandates exhaustion of administrative remedies, even a futile administrative process must be utilized. Giano v. Goord, 250 F.3d 146, 150-51 (2d Cir. 2001) (alleged ineffectiveness or futility of pursuing administrative remedies does not excuse inmate from obligation to exhaust his administrative remedies pursuant to the PLRA); McNair v. Jones, No. 01 Civ. 3253, 2002 WL 31082948, at *8 (S.D.N.Y. Sept. 18, 2002) (citing Booth, 532 U.S. at 741 n.6)). Here, plaintiff's explanation for his failure to pursue his administrative remedies does not constitute special circumstances.

Accordingly as plaintiff failed to exhaust his administrative remedies regarding the strip search, defendants' motion for summary judgment should be granted.

### Substantive Grounds

Alternatively, even if plaintiff had exhausted his administrative remedies regarding the strip search, his claim would still be dismissed on the merits. Defendants argue that plaintiff's complaint does not allege that defendants were personally involved in the alleged violation, and therefore plaintiff fails to state a claim upon which relief can be granted.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1991)). Personal involvement of a supervisory official in a § 1983 violation may be established by showing that: (1) the official participated directly in the violation; (2) the official, after learning of the violation through a report or appeal, failed to remedy the wrong; (3) the official created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the official was grossly negligent in supervising subordinates who caused the unlawful condition or event; or (5) the official exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. Back v. Hastings on Hudson Union Free School District, 365 F.3d 107, 127 (2d Cir. 2004) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)); Washington v. Kelly, 03 Civ. 4638, 2004 WL 830084, at *3 (S.D.N.Y. April 13, 2004).

### Commissioner Horn

Plaintiff alleges that Commissioner Horn should be held liable on the ground that "there was a written policy or standard that unlawfully confined the plaintiff/parolee who was state

11

property at a local correctional facility instead of confinement at a detention center for parole violators." Complaint at 6, Statement of Claim at ¶ 4. First, contrary to plaintiff's assertion, New York State does not maintain prison facilities specifically designated for parole violators. Individuals who are charged with violating parole are held at local jails until such time as the parole violation is adjudicated. See New York Executive Law § 259-i (3)(b) ("A person who shall have been taken into custody pursuant to this subdivision for violation of one or more conditions of presumptive release, parole, conditional release or post-release supervision shall, insofar as practicable, be incarcerated in the county or city in which the arrest occurred."). Moreover, holding a parolee on a parole warrant does not give rise to a constitutional violation. Plaintiff is not a free citizen, but a person whose conditional liberty is dependent upon his adherence to the conditions of release. See Morrissey v. Brewer, 408 U.S. 471 (1972); Allison v. Parole Officer Canady Badge 1255, No. 94 Civ. 6857, 1995 WL 702397, at *2 (S.D.N.Y. Nov. 28, 1995). Finally, it is well settled that a prisoner has no constitutional right to serve a sentence in any particular institution, or to be transferred or not transferred from one facility to another. See Olim v. Wakinekona, 461 U.S. 238, 249-50 (1983); Meacham v. Fano, 427 U.S. 215, 225-28 (1976).

Plaintiff's complaint fails to allege facts demonstrating that Commissioner Horn had any direct involvement with, knowledge of, or responsibility for the alleged deprivation of plaintiff's civil rights. Moreover, plaintiff's claim that he was incarcerated at Rikers instead of a "parole detention center" does not establish a violation of his constitutional rights under § 1983. Accordingly, in the alternative, plaintiff's § 1983 claim against Commissioner Horn should be dismissed for failure to state a claim upon which relief can be granted.

### Deputy Bailey

Any complaint asserting violations of civil rights "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987). Plaintiff's minimal, conclusory allegations regarding defendant Bailey, that he "had direct personal involvement by ordering a random mandatory involuntary strip search upon the plaintiff . . . "-- are insufficient to state a claim that the defendant violated his constitutional rights. Complaint at 6, Statement of Claim at ¶ 2; see Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996) (noting that "bald assertions and conclusions of law" are insufficient to withstand a Rule 12(b)(6) motion). As such, plaintiff's § 1983 claim against Deputy Bailey should be dismissed for failure to state a claim upon which relief can be granted.

### Warden Oliver

Plaintiff also names Warden Oliver ("Oliver') as a defendant. In order to prevail on this claim, plaintiff must demonstrate Oliver's personal involvement in the alleged constitutional deprivation. Farrell, 449 F.3d at 484. Personal involvement, as defined by the precedents of the Second Circuit, includes direct participation in the violation, failure to remedy a violation, creation of a policy or custom which perpetuates the violation, or gross negligence in the management of subordinates responsible for the violation. Id. Plaintiff asserts that "Warden Valerie Oliver is legally responsible . . . when she knew about lower officials/subordinates performances by conducting strip searches inside the dormitory place in view of other inmates and not in a private area." Complaint at 6, Statement of Claim at ¶ 3. However, merely asserting

Oliver's role as a supervisor is insufficient to establish her personal involvement. There is no *respondeat superior* or vicarious liability under § 1983. Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999). As such, plaintiff's § 1983 claim against Warden Oliver should be dismissed for failure to state a claim upon which relief can be granted.

### Strip Search: Fourth Amendment Claim

Plaintiff alleges that the strip search violated his Fourth Amendment right to protection from unreasonable search and seizure, and his Eighth Amendment right to be free from cruel and unusual punishment. Specifically, plaintiff alleges that he, along with other inmates, was strip searched in the middle of the dormitory in view of other inmates. See Complaint at 6, Statement of Claim at ¶ 1. Plaintiff further alleges that the search was "routine" Id. Plaintiff alleges that the search was conducted in a "degrading and embarrassing manner," however, he does not allege that he suffered any "physical or mental injuries." Pl's Opp. at 3, 16.

While it is true that the constitutional rights of prison inmates are curtailed, see Salahuddin v. Goord, 467 F.3d 263, 274 (2d Cir. 2006), the Fourth Amendment still requires all searches conducted within a prison, including strip searches, to be reasonable. See Hodges v. Stanley, 712 F.2d 34, 35-36 (2d Cir. 1983) (citing Bell v. Wolfish, 441 U.S. 520, 558 (1979)). In determining whether a particular strip search is reasonable, the Court considers "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Bell, 441 U.S. at 559. Strip searches have been upheld as a reasonable security measure within a correctional facility even in the absence of probable cause as long as they are related to a legitimate penological goal. See, e.g., id. (upholding prison policy of conducting visual body cavity search after every contact visit with someone from outside the prison); Covino v. Patrissi, 967 F.2d 73, 79 (2d Cir. 1992) (upholding prison policy of randomly conducting visual body cavity searches of inmates).

14

However, a strip search is unconstitutional if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish. See, e.g., See Iqbal, 490 F.3d at 163 (pretrial detainee alleged Fourth Amendment violation where he was subjected to repeated strip and body cavity searches that were not related to legitimate government purposes and designed to punish); Covino, 967 F.2d at 80 (strip search accompanied by physical and verbal abuse is unconstitutional); Hodges, 712 F.2d at 35-36 (second strip search performed soon after a first strip search served no legitimate interest when prisoner was under continuous escort); Jean-Laurent v. Wilkerson, 438 F.Supp.2d 318, 323 (S.D.N.Y. 2006).

Defendants allege that plaintiff was strip searched during a routine institutional search and that "[s]uch searches are routinely conducted to search for contraband such as weapons and drugs, and serve the legitimate penological interest of maintaining institutional security at the prison." Defs' Memo of Law at 19. Moreover, several Courts have held that strip searches of prisoners in the presence of other inmates and staff is not constitutionally defective, especially in light of legitimate security concerns. See Calhoun v. DeTella, 319 F.3d 936, 939 (7th Cir. 2003) ("There is no question that strip searches may be unpleasant, humiliating and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation. For example, a strip search of a male prisoner in front of female officers, if conducted for a legitimate penological purpose, would fail to rise to a level of an Eighth Amendment violation."); see also Elliot v. Lynn, 38 F.3d 188 (5th Cir. 1994) (visual body cavity search conducted in presence of other inmates and correctional officers reasonable in view of legitimate security concerns); Franklin v. Lockhart, 883 F.2d 654 (8th Cir. 1989) (legitimate security concerns justified conducting strip searches of inmates in segregation in view of other inmates); Michenfelder v. Sumner, 860 F.2d 328 (9th Cir. 1988) (strip searches conducted in hallway reasonable in view of legitimate security and safety considerations).

Here, plaintiff fails to allege facts to establish that the strip search was conducted for improper purposes or that the defendants' conduct during the strip search violated his constitutional rights. As such, plaintiff's § 1983 claim for an illegal strip search should be dismissed for failure to state a claim upon which relief can be granted.

**Leave to Amend**

Plaintiff seeks to amend his complaint (1) to add a <u>Monell</u> claim and name the City of New York as a defendant;[3] (2) to add the officer who performed the strip search as a defendant; (3) to plead that Warden Oliver and Deputy Bailey are personally liable, and (4) to seek attorney's fees. Pl's Opp. at 14.

Plaintiff's motion to file an amended complaint should be denied. A motion to amend "shall be freely granted when justice so requires." Fed.R.Civ.P. 15(a). Leave should be denied when an amendment is offered in bad faith, would cause undue delay or prejudice, or would be futile. See <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Milanese v. Rust-Oleum Corp.</u>, 244 F.3d 104, 110 (2d Cir. 2001). Here, the motion to amend should be denied as futile since the proposed amendments do not cure plaintiff's failure to exhaust. See <u>Hayden v. County of Nassau</u>, 180 F.3d 42, 53 (2d Cir.1999) ("[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to

---

[3] See <u>Monell v. Dept. of Soc. Servs.</u>, 436 U.S. 658, 690-91 (1978) (in order to state a § 1983 claim against a municipality, plaintiff must establish a municipal policy, custom or practice contributed to the violation).

16

replead is rightfully denied."); see also Jones v. New York State Div. of Military and Naval Affairs, 166 F.3d 45, 50 (2d Cir. 1999) (district court may properly deny leave when amendment would be futile).

## CONCLUSION

Accordingly, it is recommended that defendants' motion should be granted and plaintiff's complaint should be dismissed in its entirety. Furthermore, plaintiff's cross-motion for leave to amend his complaint should be denied as futile.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R.Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/

LOIS BLOOM
United States Magistrate Judge

Dated: December 20, 2007
Brooklyn, New York

Copies to:

Honorable Carol B. Amon

Jerrell Miller
02 R 3376
Great Meadow Correctional Facility
Comstock, NY 12821-0051

Nkereuwem Umoh, Esq.
The Law Office of Uwem Umoh
255 Livingston Street
4th Floor
Brooklyn, NY 11201

Sarah Beth Evans, Esq.
New York City Law Department
100 Church Street
New York, NY 10007